UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

Plaintiff,

Jane Doe

\_\_\_ Civ. _____ (       )

**18 CV 11829**

~~Affirmation in Support of Summons and~~ Complaint

- against

JUDGE KARAS

Defendants John Doe #1-52

------------------------------------x

Plaintiff, Jane Doe, alleges as follows:

**Factual Allegations**

1. Plaintiff Jane Doe has been modeling since 2009, collaborating with photographers, make-up artists and building a portfolio which would help her build a public image and business. Plaintiff pursued a life long dream of building a business and coaching female empowerment, finishing college with a Bachelor of Business Administration degree and minoring in Psychology in 2009. Furthermore, starting in 2012 Plaintiff enrolled in coaching trainings and got certified as a Neuro Linguistic Programming, Emotional Intelligence and Strategic Intervention ( Working with Women Specialization) Coach, in order to combine these coaching techniques and build a coaching practice. All of these steps taken by Plaintiff such as modeling, the choice of major and minor in college, certifications as coach, were done as pre-requisite steps towards building a coaching practice which would focus on female empowerment.

2. Jane Doe has put work and effort into finishing college, getting certified, modelling, researching and writing on her website, writing books and writing posts on her social media platforms such as Facebook, Instagram, Twitter, in order to build a coaching business and earn a living and establish herself in the industry. Initially Plaintiff build her website and started posting her modeling pictures and selfies, writing articles and posting on her personal Facebook page to which she created and attached a business page promoting her work, in order to build a

following and promote her business. She then wrote her first book and published it on her website and Amazon, in March 2015, giving it for free with the same goal of building a following and business, wanting to establish herself faster in the industry. Then, Plaintiff wrote a second book around September 2015, which she put up for sale at a low price of $5. While still working on some editing for the second book and doing research for a third one, Plaintiff was also posting on her official Facebook business page which she created in February 2015, where she was advertising her books, writing articles about personal development and using her pictures in order to build her business. Before publishing the first book, Plaintiff drove 4 hours to do a photoshoot with a photographer she worked with in the past, in order to have material for her book which was published on March 26th, 2015, and pictures from this photoshoot were infringed upon as well.

3. The copyright protection of her work was meant to keep away illegal usage of her pictures and mutilation of her work, or produce character assassination through copyright infringement. Her automatic copyright protection did nothing to keep away defendants from copying and using several pictures owned by Plaintiff in articles written about her, articles reporting on a lawsuit filed against Jane Doe asking for $300.000 in damages. This lawsuit was filed stating breach of contract, and the lawsuit was filed on a fraudulent lease, by a landlord who not only forged the original lease from 2013, but also breached the lease in May 2015 when his employees illegally trespassed into Jane Doe's apartment.

4. Plaintiff Jane Doe was left threats in her apartment even before May 2015, and then after the lawsuit was filed against her, she was left a written threat which said that no matter how many lawyers she will get and no matter how much evidence she will present, her lawyers and the judges will be bribed and she will be destroyed, because she needs to accept to become a sexual slave and pay for her sins. Plaintiff was also stalked and followed on the street the day of December 18th, 2015 and told that if she wanted fame with being a coach, she will be made infamous with this lawsuit.

5. Jane Doe lost the opportunity of building her business, a normal job in the corporate world, was exposed to intense humiliation, mutilation of character and work, and her life put in danger as strangers would approach her on the street and verbally abuse her calling her names. Her Facebook business page has been hacked and attacked and accounts liking her page have been constantly dropped, while she has been told on the street that she will not be allowed to build a business. Her website was also hacked several times and content erased, but Plaintiff had back-ups of the content and she re-uploaded all her work.

6. The infringement was willful and done in order to generate sales, through a strategic choice of pictures picked, and the mannerism in which the articles were written, all meant to generate sales, portray scandal, mutilate her character, business and lifestyle, manipulate and exploit Plaintiff's features and sex appeal expressed in certain pictures chosen by defendants. Defendants chose certain pictures and used some of them over and over again, in order to generate profits, and traffic, without caring about the humiliation, danger, or destruction caused of Plaintiff's work, business, character, life and health.

7. Since 2009 Plaintiff in order to promote her business of coaching female empowerment has been taking modeling photos as well as selfies ,photos in which she expresses emotions of love, sensuality, intimacy, glamour, flirtation, sex appeal, happiness, sexual power and confidence. More specifically, she has been fascinated all her life with powerful women both past and contemporary, women who have not been afraid to embrace and celebrate their sensuality and beautiful features or curves. She wanted to build a business, write books and hold seminars where she can gather with other women and celebrate their femininity, the amazing gifts of being a woman, and promote a feeling of sisterhood. Plaintiff decided to go to school and build a business which will help her empower women, coach them and help them become motivated and inspired to shape their bodies, change aspects of their life they do not like, and take actions which will bring about life circumstances they do want and would bring happiness. Plaintiff has been using her own beauty, sex appeal, and used her pictures in order to encourage other women to feel good about themselves by taking care of their bodies, minds and souls, and feeling confident in expressing their whole selves. Admiring powerful women enchanting the world with their sex appeal and confidence such as Angelina Jolie, Halle Berry or Ciara, to name a few, Plaintiff has not been afraid to express her own sex appeal and encourage other women to take care of themselves and be proud of their bodies, minds and souls, nourishing them and becoming the best version of themselves.
For the Halloween of 2014, Plaintiff wanted to embody both femininity and confidence, and decided to wear a Cat Woman costume meant to resemble the one worn by Halle Berry in the movie Cat Woman. Therefore, she created her own costume by matching a sexy lace shirt, boy shorts, fishnet stockings, lace gloves, kitty cat ears and over the knee boots. Plaintiff initially bought the costume from Ebay, and then came up with the idea of building her own costume with the elements exposed above. This picture has been taken out of context, used and re-used by newspapers such as New York Post who used it in 2 separate articles, then used by Gothamist where Plaintiff was called names such as "hooker", "sex worker", etc, then again used by a convicted felon who did 10 years in jail for raping a woman after he drugged her up at a club and raped her in the bathroom. This convicted felon verbally abused Plaintiff calling her a "hooker", "hoe", "bitch" and linked his article to an article written in December 2015 by the New York Post, even though he wrote his article a year after that in 2017. As we all know Halle Berry was very sexy and perfectly played a dualistic type of personality in Cat Woman, showing a sensitive and shy self as well as a powerful, sexy and confident self. Plaintiff admired the actress and the way she defined the different sides all women have to some degree, and which have to be all expressed in balance for a whole persona to emerge, and wanted to embody that in her Halloween costume. Instead of enjoying a simple Halloween costume, Plaintiff was viciously attacked and called names such as hooker, by commenters posting comments in response to an article posted by the newspaper Gothamist.
8. Throughout the years Plaintiff has always been concerned with how she can take care of her body, mind and soul, and in her first book published in March 2015, she wrote about all of these things, offering advice from all angles such as connection with a higher self and divinity, understanding of quantum physics, the physical manifestation of energy in waves or particles, creation of reality through thoughts and emotions, relationship management, finances, career, diet, exercise etc.

9.  Copyright is the lawful right of an author, artist, composer or other creator to control the use of his or her work by others. Generally speaking, a copyrighted work may not be duplicated, disseminated, or appropriated by others without the creator's permission. The public display or performance of copyrighted works is similarly restricted, and the unauthorized use of a copyrighted work constitutes copyright infringement. Visual works of art, such as Plaintiff's modeling pictures created through selfies or collaborations with photographers represent such works and willful copyright infringement was committed, also leading to character assassination and destruction of a business which was being developed.
10. Publishers of newspapers both in print and online content, diverse websites with online content, exposed themselves to willful copyright infringement when they copied and published in their articles and websites the photos which Plaintiff had a copyright on, those done with a photographer as well as the selfies, since all were used on social media, Plaintiffs website and books in order to promote her coaching business. These publishers did not:
    A) Asked or obtained a license to use the image from Plaintiff. Beyond privacy, the rights to profit and exploit the image were taken from Plaintiff, the purpose of the photos destroyed, and a character assassination and mutilation of Plaintiff's public image, business and persona.
    B) Plaintiff did not warrant usage of her copyrighted pictures, and moreover, the infringers gave rise to more infringement since they did not obtain an intellectual property indemnification clause protecting them for future infringement risen from the initial infringement committed by them. Besides the copyright infringement done by the initial newspapers copying and using the pictures in their articles, a multitude of websites and other smaller newspapers then linked themselves to the original articles and committed copyright infringement again and again by constantly uploading Plaintiff's pictures online.
    C) When faced with DMCA and Copyright infringement letters coming from Plaintiff, some of the infringers refused to take down the photos used illegally and kept them on their platform giving rise to constant humiliation, exposure to danger, harassment and character assassination of Plaintiff.

11. The owner of the copyright is the one taking the picture, and as the owner of a copyrighted work, the shooter has the exclusive right to sell, adapt, alter, copy, publish or distribute the photo. Both Facebook and Instagram claim no copyright ownership in any content posted there, including photos, therefore taking Plaintiff's photos used for the promotion of her business in her personal Facebook profile as well as Business page still represented copyright infringement. Plaintiff's website automatically established copyright over the content published there and mentioned that on the website as well as the books published by Plaintiff which contained her photos, both taken at modeling photoshoots or taken as selfies.

12. In the US, fair use allows for limited use of copyrighted material without authorization from the author of the creative work. The purpose of fair use is to provide limited use if it benefits the public. In this case there was no limited use of the creative work, since the creative work was copied in its entirety and illegally used in articles and postings. Moreover, this fair use has to benefit the public. Through the infringement the public did not have anything to gain, and if the intent was to report on the news of a lawsuit filed against Plaintiff, then the articles could have been written without usage of the pictures and creation of infringement while producing

character assassination, humiliation and putting Plaintiff's life in danger. Instead the infringement was done in order to generate sales for those committing the infringement, created scandal, destroyed Plaintiff's business, life and produced character assassination.

13. Plaintiff was harmed by the negative publicity received from defendants, was cyberbullied online and has been constantly threatened by strangers on the street. Moreover, just as the time for the expiration of the statute of limitations regarding the filing of this copyright infringement lawsuit approached, and Plaintiff was gathering her evidence in order to file the copyright infringement lawsuit, she was assaulted by a man wearing a black mask over his face. She was punched by him in her left shoulder while he dropped at her feet a piece of paper on which was written the following threat: "This is for thinking of filling a copyright infringement lawsuit. If you file, it will be public and you will be attacked even more online and on the street".

14. Therefore, Plaintiff is asking the court to grant her a protective order which will assure her anonymity regarding the filling of this lawsuit as well as throughout litigation, since Plaintiff's image has been damaged through the articles written about her by defendants, and Plaintiff is attaching here evidence of the fraud committed on the lease in the lawsuit filed against her for breach of contract, in order to hide the identity of the guarantor, present on the lease in 2013 with Jane Doe.

15. The newspapers and websites which have committed copyright infringement, knew very well or should have known that it is illegal to copy Plaintiff's pictures and use them in negative articles about her. They not only committed willful copyright infringement, but they also destroyed Plaintiff's chances of building her business, her public image, caused humiliation, put her life in danger by exposing her to attacks and assaults from strangers, and participated in a campaign which led to character assassination. These defendants did not stay and pondered on what they are reporting on, and how they are reporting on a frivolous lawsuit, a Plaintiff which has been accused by a building of tenants for using harassment tactics in order to force them to leave their rent controlled apartments so that he could renovate them and make a higher profit. Same Plaintiff has been accused of aggravated harassment and lost a $5 million dollars lawsuit with criminal charges attached to one of their employees due to late night calls he made to a commissioner, where he would threaten her by saying things such as "we'll get you", meaning we will kill you.

16. The location of the infringement in online cases is of little importance, as the primary aim of the infringer is to make the works available to anyone with access to an Internet connection, including computer users in New York.

17. There are six basic rights protected by copyright. The owner of copyright has the exclusive right to do and to authorize others to do the following:

A) To reproduce the work in copies
B) To prepare derivative works based upon the original work
C) To distribute copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending
D) To publicly perform the work, in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works

E) To publicly display the work, in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work.

18. Plaintiff had the right to promote her business and had copyright ownership over the images she used on her social media platforms, books and website in order to promote herself as a coach and her coaching business. Moreover, Plaintiff was a model and had an intent of promoting female empowerment, therefore celebrating sensuality and confidence. She was posting pictures where she would express not only regular lifestyle photography, but also pictures meant to inspire women to a confident attitude of expression of sex appeal and sassiness. For the Halloween of 2015, Plaintiff again wore a sexy Cat Woman suit along with a statement of unafraid expression of female sensuality and bashing of hypocritical and prejudiced attitudes meant to restrict women and have them wear garbage bags and baggy clothing in order to prevent attacks from males who act like animals and can't control their instincts.

**107. Limitations on exclusive rights: Fair use**

**Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include**

19. The usage of Plaintiff's pictures did not constitute fair use, and instead infringed on her exclusive rights according with Section 106(a), since articles could have reported on the 'alleged news of the lawsuit", without causing willful copyright infringement through the usage of Plaintiff's pictures. The pictures were used deliberately in order to increase sales for the newspapers and websites making public the articles, creating scandal and devaluing the original works, portraying Plaintiff in a false defamatory light, exposing her to danger and attacks both online and offline and destroying Plaintiff's life.

20. Four factors that must be assessed to determine whether a particular use is fair use. There are no bright-line rules regarding fair use and each determination is made on an individualized case-by-case basis.

A) <u>Purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes:</u> Nonprofit educational and noncommercial uses are more likely to be fair use. Additionally, "transformative" uses are more likely to be considered fair. Transformative uses are those that add something new, with a further purpose or different character, and do not substitute for the original use of the work. As mentioned before the usage of the pictures was not nonprofit or noncommercial, on the contrary, it either generated sales and increased traffic through the sexy images displayed and scandal around Plaintiff's image, since Plaintiff used to model and her looks, and outfits increased revenue and traffic for those illegally using Plaintiff's images in their articles and websites. When it comes for transformative uses, we can see here that there were transformative uses of the pictures, a mutilation of the original intent of the works, with a brainwashing effect on the readers and viewers which were

steered in the direction of forming a negative opinion regarding Plaintiff's character and lifestyle. Plaintiff was portrayed as being potentially a sex worker. This completely substituted for the original use of the work, since Plaintiff is proud and grateful for her looks and she was using her image in order to build her business which has been focusing on working with women, empowering women to own their sensuality, confidence and strength. Plaintiff encouraged women to be proud of their bodies, minds and souls, to take care of their bodies, to not compromise for what they want in life, to be ambitious and build their careers, to know what they want out of life and go for it, to be fighters, as well as sensitive and soft with their chosen partners, and not let themselves bullied or intimidated by anyone. She promoted a fierce independence, a sense of knowing what you want out of life and breaking barriers imposed by prejudice, misogyny and male dominance still prevailing around the world. All of that was taken away from her and instead her pictures willfully infringed upon producing character assassination, and destruction of business and life circumstances, deterioration of health and tremendous humiliation, pain and suffering. Links were used online from the news articles written and her name showing up under websites such as "exoffenders.com", portraying her as some sort of criminal, sex worker etc.

B) <u>Nature of the copyrighted work:</u> Using a more creative or imaginative work (such as a novel, movie, or song) is less likely to support fair use than using a factual work (such as a technical article or news item). As explained above, the articles could have been written without the usage of the pictures, which did not add anything to the article, besides creating a false image regarding Plaintiff's character and lifestyle, all based on a fraudulent lawsuit filed against Plaintiff.

C) <u>Amount and substantiality of the portion used in relation to the copyrighted work as a whole:</u> Courts look at both the quantity and quality of the copyrighted material that was used. Using a large portion of the copyrighted work is less likely to be fair use. Using even a small amount of a copyrighted work was determined not to be fair use because the selection was an important part—or the "heart"—of the work. Again as explained above, the work was used in its entirety, the pictures were basically copied from the social platforms, books or website where Plaintiff was using them as a medium of expression of her work and in order to promote a following and build her coaching business, and then illegally used in the news articles written about her regarding the lawsuit filed against her. As it can be seen, even the background picture that Plaintiff has on her Facebook personal page is one aligned with the coaching practice and principles of her business, showing a Buddha and a quote meant to show the NLP and Emotional Intelligence principles written about by Plaintiff, such as we attract reality with our thoughts and our emotions. Plaintiff has been writing about God and the Universe since 2012, and starting 2015 she has been abused verbally on the street by strangers who told her to stop writing about energy as being universal and all expressions ok, and instead asked to convert to Islam and write about that. She was told she needs to become a sexual slave and "pay for her sins". Plaintiff has been living with anxiety medication, panic attacks, has been finding threats left for her through different avenues, stalked constantly on the street and harassed, and pressured to accept what is being asked of her, such as providing her harassers money through services of sexual slavery in order to generate cash and pay for her sins. Plaintiff was told that she is too proud about her looks and intelligence and she has been treating men who fell in love with her very bad, and

because of that she needs to be humbled and transformed into a sexual slave and pay for her pride, which she was told is one of the seven capital sins.

D) <u>Effect of the use upon the potential market for or value of the copyrighted work</u>: Here, courts review whether, and to what extent, the unlicensed use harms the existing or future market for the copyright owner's original work. In assessing this factor, courts consider whether the use is hurting the current market for the original work (for example, by displacing sales of the original) and/or whether the use could cause substantial harm if it were to become widespread. As explained before the willful copyright infringement of Plaintiff's pictures has completely destroyed not only the value of the pictures which were meant to help build Plaintiff's coaching business of empowering women, but has produced a complete character assassination of the Plaintiff. Not only newspapers and journalists and well as websites owner could see they were copying those pictures from social media platforms and website where these pictures were displayed in order to attract a following and build a coaching business, but even after they were asked to take them down, even sent DMCA's, they refused to do that. The willful copyright infringement was deliberate and a complete disregard for the law and civil rights of Plaintiff was displayed.

In addition to these four factors, the statute also allows courts to consider any other factors that may be relevant to the fair use analysis. Courts evaluate fair use claims on a case-by-case basis, and the outcome of any given case depends on the specific facts of that case. Here Plaintiff wants to add that all these newspapers and websites committing willful copyright infringement did not care about reporting on the news and what the truth actually is. Plaintiff was not asked what is her side of the story, evidence etc. Plaintiff's pictures have been used and re-used, they have been constantly uploaded on new websites and the copyright infringement perpetuated, while Plaintiff has been suffering verbal and physical attacks on the street.

21. To bring a copyright infringement lawsuit, a copyright holder must establish ownership of a valid copyright and the copying of constituent elements of the work that are original. A plaintiff establishes ownership by authorship (by the plaintiff itself or by someone who assigned rights to the plaintiff) of

    A) an original work of authorship that is

    B) fixed in a tangible medium (e.g. a book, website, social media platforms such as Facebook and Instagram, Twitter etc.)

    Plaintiff here has shown evidence that she is the holder of a valid copyright and that illegal and willful copyright infringement was produced by the copying of her original works, as well as her original works being transformed and destroyed through the repackaging and the message sent to online and offline readers and viewers. Plaintiff has also shown evidence of ownership or authorship, through the selfies taken to promote her business, as well as works done by photographer Brian, works for hire, or Daniel with whom the copyright rights are shared. Daniel was approached through email and he confirmed not providing the newspapers with pictures of Plaintiff, and also sent her another copy of the model release dated 2009 which she can use in order to prove her copyright rights over the pictures. Plaintiff has also provided evidence of her copyright rights being infringed, since she acquired her rights the moment she displayed the

pictures in a tangible medium on her Facebook personal profile, business page, website and books published and meant to build a following and build her coaching business.

The copyright owner must also establish both:

A) actual copying and

B) improper appropriation of the work.

Plaintiff will provide evidence of an actual copying of the work being done by the illegal copying and usage of her pictures in the articles and websites where they were posted, as well improper appropriation of the work. Moreover, Plaintiff tried to regain her copyright rights after the illegal usage of the picture was done and she was ignored or her demands refused, while her pictures have been constantly uploaded and reuploaded online on multiple sites, causing character assassination.

The copyright owner, as plaintiff, bears the burden of establishing these three elements of the prima facie case for infringement. Plaintiff has proven the 3 elements of prima facie case for infringement in the above mentioned arguments.

As mentioned by law, registration is not required to establish copyright protection, as long as the prima facie elements are established, but registration is necessary before bringing a lawsuit and Plaintiff obtained that registration, therefore she is entitled to filing this lawsuit for willful copyright infringement.

22. A plaintiff establishes "actual copying" with direct or indirect evidence. Direct evidence is satisfied either by a defendant's admission to copying or the testimony of witnesses who observed the defendant in the act. Plaintiff will prove willful copyright infringement and actual copying through direct evidence, presenting as evidence screenshots of the articles written about her and the usage of her pictures by each defendant mentioned here, some of them using up to 7-8 pictures in one article.

A plaintiff may establish "access" by proof of distribution over a large geographical area, or by eyewitness testimony that the defendant owned a copy of the protected work and a showing of misappropriation is necessary. Plaintiff has shown that access was provided nationwide and internationally as well, therefore unlimited access was provided when the articles and the pictures were used. When approached to take them down with a DMCA and Copyright Infringement letter, Plaintiff encountered a blatant refusal. The willful copyright infringement provided unlimited online access, both national and international, as well as unlimited access to readers who bought the actual newspapers on the street, especially since some newspapers presented the article on the first page.

23. A successful copyright infringement plaintiff may seek both "injunctive relief" and monetary damages.

**17 U.S. Code § 502 - Remedies for infringement: Injunctions**

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

17 U.S. Code § 504 - Remedies for infringement: Damages and profits

(a)In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b)Actual Damages and Profits.—

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational

institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

(3)

(A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement.

(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U.S.C. 1127).

(d)Additional Damages in Certain Cases.—

In any case in which the court finds that a defendant proprietor of an establishment who claims as a defense that its activities were exempt under section 110(5) did not have reasonable grounds to believe that its use of a copyrighted work was exempt under such section, the plaintiff shall be entitled to, in addition to any award of damages under this section, an additional award of two times the amount of the license fee that the proprietor of the establishment concerned should have paid the plaintiff for such use during the preceding period of up to 3 years."

17 U.S. Code § 106A - Rights of certain authors to attribution and integrity

(a)Rights of Attribution and Integrity.—Subject to section 107 and independent of the exclusive rights provided in section 106, the author of a work of visual art—

(1) shall have the right—

(A) to claim authorship of that work, and

(B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create;

(2) shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation; and

(3) subject to the limitations set forth in section 113(d), shall have the right—

(A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

(B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

(b)Scope and Exercise of Rights.—

Only the author of a work of visual art has the rights conferred by subsection (a) in that work, whether or not the author is the copyright owner. The authors of a joint work of visual art are coowners of the rights conferred by subsection (a) in that work.

(c)Exceptions.—

(1) The modification of a work of visual art which is a result of the passage of time or the inherent nature of the materials is not a distortion, mutilation, or other modification described in subsection (a)(3)(A).

(2) The modification of a work of visual art which is the result of conservation, or of the public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless the modification is caused by gross negligence.

(3) The rights described in paragraphs (1) and (2) of subsection (a) shall not apply to any reproduction, depiction, portrayal, or other use of a work in, upon, or in any connection with any item described in subparagraph (A) or (B) of the definition of "work of visual art" in section 101, and any such reproduction, depiction, portrayal, or other use of a work is not a destruction, distortion, mutilation, or other modification described in paragraph (3) of subsection (a).

(d)Duration of Rights.—

(1) With respect to works of visual art created on or after the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, the rights conferred by subsection (a) shall endure for a term consisting of the life of the author.

(2) With respect to works of visual art created before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, but title to which has not, as of such effective date, been transferred from the author, the rights conferred by subsection (a) shall be coextensive with, and shall expire at the same time as, the rights conferred by section 106.

(3) In the case of a joint work prepared by two or more authors, the rights conferred by subsection (a) shall endure for a term consisting of the life of the last surviving author.

(4) All terms of the rights conferred by subsection (a) run to the end of the calendar year in which they would otherwise expire.

24. Injunctions: Copyright Act § 502 authorizes courts to grant both preliminary and permanent injunctions against copyright infringement. There are also provisions for impounding allegedly infringing copies and other materials used to infringe.

    An "injunction" is a court order directing the defendant to stop doing something (e.g., stop selling infringing copies). One form of equitable relief that is available in copyright cases is a seizure order. At any time during the lawsuit, the court may order the impoundment of any and all copies of the infringing products.

25. Damages and/or Profits: Copyright Act § 504 gives the copyright owner a choice of recovering: (1) their actual damages and any additional profits of the defendant; or (2) statutory damages.

    The copyright owner may recover the profits he or she would have earned absent the infringement (actual damages) and any profits the infringer might have made as a result of the infringement but that are not already considered in calculating actual damages. To recover actual damages, the plaintiff must prove to the court that, in the absence of the infringement, the plaintiff would have been able to make additional sales, or perhaps been able to charge higher prices, and that this would have resulted in profits given the owner's cost structure.

26. Plaintiff here is seeking permanent injunctive relief, asking the court for a seizure order and:

A) order defendants to permanently take down her pictures from their articles, websites and any medium of expression they might have used
B) give Plaintiff a protective order which Plaintiff can send to any further websites or newspapers trying to commit copyright infringement though the usage of these pictures in the future
C) consider the evidence of fraud in the lawsuit against Plaintiff and the evidence of illegal trespassing presented by Plaintiff here, and order defendants to take down the articles they wrote about this fraudulently filed lawsuit against Plaintiff
D) impose actual damages based on the loss of revenue and business destruction of Plaintiff, as well as sales and profits made by those committing the willful copyright infringement and traffic generated through the illegal usage of the modeling pictures taken by Plaintiff to promote her coaching business
E) impose punitive damages for the willful copyright infringement and the writing of the articles based on a fraudulently filed lawsuit, which produced irreparable pain and suffering, loss of opportunity of building a coaching business for Plaintiff, irreparable humiliation, exposure to danger throughout these past years.
Plaintiff is asking for restitution of damages in the amount of $5.000.000 for all the above mentioned arguments which caused irreparable damage and pain and suffering to Plaintiff. Plaintiff also reserves the right to amend the amount of damages asked from defendants, based on further discovery proceedings or legal advice Plaintiff might receive throughout the litigation of this lawsuit.

17 U.S.C. § 412 provides:

Section 501 of the copyright law states that "anyone who violates any of the exclusive rights of the copyright owner ...is an infringer of the copyright or right of the author."

"A plaintiff sustains its burden of proving willfulness "by showing the defendant knew or should have known it infringed the Plaintiff's copyrights. Willful copyright infringement does not require a showing of actual knowledge. To prove willfulness, plaintiffs may show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or that the infringer acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights.

27. Plaintiff had copyright rights from the moment she took and published the pictures in a fixed medium of expression, starting with 2009 by displaying them on her Facebook profile, attached Facebook business page, website, official Facebook business page and books. Plaintiff was not aware of all the copyright infringement present on the web, and is still not aware of all infringement since several pages could miss from searches, but Plaintiff registered the pictures with the US Copyright Office on 02/15/2017 and afterwards sent Copyright Infringement Letters and DMCA's whenever she discovered copyright infringement.

### 28. Parties

**Plaintiff: Jane Doe**

Plaintiff Jane Doe is a model and coach based in New York, USA who has finished a Bachelor of Business Administration, been modeling since 2009 and got certified as a Neuro Linguistic Programming, Emotional Intelligence and Strategic Intervention ( Working with Women specialization) Coach. Plaintiff has followed a life long plan and taken appropriate steps, putting work and effort into building a coaching practice meant to empower women.

**Defendants John Doe #1-52**

The true names and capacities of Defendants Doe 1-52 are presently unknown to Jane Doe, who therefore sues them by such fictitious names and by using the evidence of website information where the copyright infringement was found, and which she will present as evidence through the screenshots taken when the copyright infringement was discovered. Jane Doe is informed and believes that each of the fictitiously named defendant has been committing willful copyright infringement and is responsible in some capacity for matters herein alleged.

Jane Doe will amend her complaint to state the true names and capacities of Does 1-52 when they are ascertained.

This is a redacted copy of the original Affirmation in Support of the Summons and Complaint, which Jane Doe is providing to the court along with a copy of a police report. Plaintiff Jane Doe is asking the court to make public only the redacted copy, since Plaintiff was threatened and assaulted on the street and told that if she files this lawsuit for copyright infringement, then she will be again attacked online and on the street.

*[signature]*

12/17/18